IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLINE SMITH-FLATOW | ) | |
|     Plaintiff, | ) | |
| | ) | |
|   -vs- | ) | No. 1:08-CV-00647 |
| | ) | |
| CHICAGO POLICE OFFICERS | ) | Honorable Judge Aspen |
| S. REYES (Star #17832), | ) | |
| L. WISE (Star #15647), | ) | Magistrate Judge Nolan |
| and the CITY OF CHICAGO, | ) | |
|     Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

**NOW COMES** the plaintiff, Caroline Smith-Flatow, by and through their attorneys, ERICKSON & OPPENHEIMER, LLC, complaining of the Defendants, Chicago Police Officers S. Reyes (Star #17832), L. Wise (Star #15647) and the CITY OF CHICAGO, and states as follows:

### Introduction

1. This is a civil action seeking damages against Defendants for committing acts under color of law, and depriving Plaintiff of rights secured by the Constitution and laws of the United States. In sum, Defendants denied Plaintiff equal protection under the law because of her gender, intentionally inflicted emotional distress, assaulted, unlawfully seized, falsely arrested and imprisoned her. Plaintiff has been harmed by the unconstitutional conduct of the Defendants.

**Jurisdiction**

2. The jurisdiction of this Court is invoked pursuant to the Civil Rights Act, 42 U.S.C., § 1983, the Judicial Code, 28 U.S.C. § 1331 and 1343 (a); the Constitution of the United States; and pendent jurisdiction for attendant state claims as provided under U.S.C., § 1367(a).

**The Parties**

3. Plaintiff Caroline Smith-Flatow resides at 57 W. 15th Street, Chicago, Illinois, 60605.

4. Defendant Officers were, at the time of this occurrence, employees of the Chicago Police Department and acted under their authority as duly appointed police officers in the Chicago Police Department at all relevant times.

5. Defendant City of Chicago is a municipal corporation organized under the laws of the State of Illinois, which operates the Chicago Police Department. Defendant City of Chicago is ultimately responsible for the policies, procedures, and practices implemented through its various agencies, agents, departments, and employees, and for injury occasioned thereby.

**Background Facts**

6. On February 5, 2007, Plaintiff Smith-Flatow attended a Super-Bowl party at 1643 N. Burling (Burling & North Avenue), Chicago with her 3 children, Kristin (12), Billy (10) and Michael (8), her sister Sandra Smith and family friends.

7. While at the Super-Bowl party, Plaintiff Smith-Flatow had three glasses of wine.

8. At approximately 9:00 p.m., Plaintiff Smith-Flatow and Justin Palm, a family friend, took Smith-Flatow's children home for the evening.

9. Because the temperature on February 9, 2007, was approximately 2º Fahrenheit and because Mr. Palm's car was parked much closer to the party, Mr. Palm drove Smith-Flatow and her children to her home at 57 W. 15th Street, Chicago.

10. While at home, Plaintiff Smith-Flatow fed her children and got them ready for bed.

11. Smith-Flatow and Mr. Palm had tea with cheese and crackers while they waited an hour to an hour and a half for 8 year-old Michael and 10 year-old Billy to fall asleep. Kristin was left to baby-sit and was watching television in the bedroom when Smith-Flatow left.

12. At approximately 10:30 p.m., Plaintiff Smith-Flatow and Mr. Palm returned to the neighborhood where she had parked her car. On the way, they stopped at Mr. Palm's house who lives in the neighborhood. They stayed at Mr. Palm's for approximately 1-1 1/2 hours.

13. Mr. Palm then drove Smith-Flatow to her parked car.

14. Smith-Flatow drove her frozen car at a very low rate of speed because of the extreme temperatures.

15. At approximately 12:30-1:00 p.m., Plaintiff Smith-Flatow was stopped by Defendant Officers at Clark and Huron Streets for failing to stop at a stop sign.

16. Defendant Wise approached Plaintiff Smith-Flatow's car and requested her insurance and registration.

17. Plaintiff Smith-Flatow reached over and opened her glove-compartment, removed her registration and proof of insurance, and gave it to the Defendant Officers.

18. At no time was there a plastic zip-lock baggie containing a white powdery substance in her glove compartment.

19. The Defendant officers then asked Smith-Flatow if she had been drinking. Smith-Flatow told the officers that she'd had some wine earlier in the evening.

20. The Officers then ordered Smith-Flatow from her car and subjected her to a series of field sobriety tests.

21. She was then asked to submit to a breathalyzer test which she refused. Upon her refusal, the Defendant officers handcuffed Smith-Flatow and transported her to the 18th Chicago Police District Station at 1160 N. Larabee Avenue, Chicago, where she was placed in a cage.

22. Smith-Flatow's car was impounded by Defendant Officers and subsequently searched pursuant to an inventory search.

23. A bag of flour, which had been in Smith-Flatow's car for several weeks and was a part of her child's science project, was in the back of her car.

24. While Smith-Flatow was at the 18th district station, Defendant Wise entered holding area where Smith-Flatow was locked-up and walked past her and said to at least two other officers, "look what I found in her car," as he held a zip-lock bag containing a white powdery substance above his head.

25. When she saw the zip-lock baggie, she asked to make a phone call to check on her kids.

26. When defendant learned that plaintiff was a mother he called Smith-Flatow "a fucking whore," "a fucking liar" and "a drug addict." He told her she was "a lying fucking whore who does drugs and leaves her children home alone."

27. Officer Wise then displayed her driver's license to other officers and stated that "you can tell she is a lying whore because she dyes her hair."

4

28. The Defendant Wise then told Smith-Flatow that because "she was a liar and a fucking whore, drug-addict who leaves her kids at home," that he had to go get them.

29. The Defendant officers left the 18th District station and were gone for about an hour before returning to the station.

30. The Defendant Wise continued to harass Smith-Flatow by calling her a "fucking whore who does drugs and leaves her kids home alone," for another 3-4 hours.

31. The Officers knocked on the door and rang the bell repeatedly, but per their parent's standing instructions, the children did not answer the door.

32. The Defendant Officers returned to the 18th district, where Officer Wise continued to call Smith-Flatow a "fucking liar, whore, drug-addict who fucking does drugs and leaves her children at home alone."

33. At times during this ongoing harassment, Defendant Wise, in Smith-Flatow's presence, told other Chicago police officers at the 18th district station that Smith-Flatow was "a fucking whore liar who does drugs and leaves her children at home."

34. During this ongoing harassment, Officer Reyes came over to the cage and whispered to Smith-flatow that she "should be quiet and we'll get you through this."

35. Defendant officers then telephoned Smith-Flatow's sister, Sandra Smith.

36. Smith-Flatow's sister arrived at the 18th district station soon thereafter.

37. Defendant Wise said with-in ear-shot of Smith-Flatow that he could no longer "do anything" to Smith-Flatow because "her fucking blood was here."

38. Defendant Wise questioned Smith-Flatow's sister in such a manner that implied that Smith-Flatow was a prostitute, including asking whether she as a habit, traveled late

5

at night, what was "your sister doing with drugs," and "do you even know what she does."

39. Smith-Flatow remained in custody until at the 18th district until she was transported to the Cook County Jail at 26th & California, at approximately 9-10 a.m.

40. At 26th, she was place in holding area with approximately 12 other people until brought before a Judge in Bond Court at approximately 1:00 p.m.

41. At the Cook County Jail, she went through intake, had blood drawn, was and remained in custody until midnight.

42. The February 8, 2007, laboratory report from the Illinois State Police, Division of Forensic Services found 36.1 grams of powder from two plastic bags to be: "no scheduled substance found."

43. On February, 2007, the felony Possession of Controlled Substance was Nolle Prosique.

## Count I—Section 1983 Equal Protection Claim

44. Plaintiff realleges and reincorporates all previous paragraphs.

45. Under 42 U.S.C. § 1983, a person who, acting under color of state law, deprives another person of his federal constitutional rights is liable to the injured party.

46. The Fourteenth Amendment to the United States Constitution, enforceable pursuant to 42 U.S.C. § 1983, provides that no state shall deny any person the equal protection of the laws.

47. Defendant Officers' actions as alleged herein were motivated by anti-female animus. The word "whore" is a common derogatory term used frequently to denigrate women.

6

Defendant Wise repeatedly subjected Plaintiff to anti-women animus. Officer Wise made it clear that he felt he could treat Smith-Flatow different then other people because she is a woman.

48. Defendant Officers were acting "under color of state law."

49. Defendant Officers purposefully singled out Plaintiff for unequal treatment based on her gender.

50. Defendant Officers' actions do not serve any sufficient, legitimate government interest.

51. As a result of Defendant Officers' denial of equal protection, Plaintiff sustained in the form of, *inter alia*, mental and emotional pain and suffering, humiliation, and past and future psychological damage. As a result Defendant Officers' denial of equal protection, Plaintiff also incurred expenses, costs and attorneys' fees.

52. Defendant Officers deprived Plaintiff of the equal protection of the laws in violation of Plaintiff's rights under the Fourteenth Amendment to the U.S. Constitution. Defendant Officers are, therefore, liable to Plaintiff under 42 U.S.C. § 1983.

53. Wherefore, Plaintiff requests actual and compensatory damages in an amount deemed at time of trial to be just, and fair, as well as attorneys fees and costs

## **COUNT II—Failure to Intervene, 42 USC Section 1983**

54. Plaintiff realleges and incorporates all of the allegations in preceding paragraphs.

55. Each of the Defendant Officers had a reasonable opportunity to prevent the other Defendant Officer from denying Smith-Flatow equal protection under the law because of her gender, intentionally inflicting emotional distress, assaulting,

unlawfully seizeing, falsely arresting and imprisoning her, but failed to do so. As a result of the Defendant Officers' failure to intervene, Plaintiff suffered humiliation and emotional distress.

56. This misconduct was objectively unreasonable and was undertaken intentionally with malice, willfulness, and reckless indifference to the rights of Smith-Flatow.

57. This misconduct was undertaken by the Defendant Officers within the scope of their employment and under color of law such that their employer, City of Chicago, is liable for their actions, as more fully described in Count XII.

58. Wherefore, Smith-Flatow demands judgment against Defendant Officers for actual and compensatory damages in an amount deemed at time of trial to be fair and just, as well as reasonable attorneys' fees and legal costs.

### COUNT III—Intentional Infliction of Emotional Distress

59. Plaintiff re-alleges and incorporates by reference all of the allegations in the preceding paragraphs.

60. The acts and conduct of Defendant Officers as set forth above were extreme and outrageous.

61. Particularly, the conduct of Defendant Officers calling Smith-Flatow a "fucking liar, whore, drug-addict who fucking does drugs and leaves her children at home alone," and threatening to take her children, causing him to be arrested and filing false complaints against him, was reasonably calculated to cause immense emotional distress to Smith-Flatow.

62. Defendant Officers intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.

63. Defendant Officer's conduct was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

64. Said actions and conduct did directly and proximately cause Smith-Flatow extensive anxiety and suffering, and emotional distress.

65. WHEREFORE, Plaintiff respectfully request that judgment be entered in his favor, awarding damages, including actual, compensatory and punitive, legal costs, including attorney's fees, and other such relief as the Court deems just and appropriate.

### Count IV—State Law Claim Assault

66. Plaintiffs reallege and incorporate by reference all of the allegations in the preceding paragraphs.

67. The Defendant Officers intentionally created an apprehension in Smith-Flatow of immediate physical harm by means of various overt behaviors intended to cause fear of harmful touching by the actual beating.

68. These actions were objectively unreasonable and were undertaken intentionally with malice, willfulness and reckless indifference to Smith-Flatow rights.

69. As a result of this conduct, Plaintiff sustained emotional and physical injuries.

70. Wherefore, Smith-Flatow demands judgment against Defendant Officers for actual and compensatory damages, as well as punitive damages, in an amount deemed at time of trial to be fair and just, as well as reasonable attorneys' fees and legal costs.

### Count V-Unlawful Seizure

71. Plaintiffs reallege and reincorporate by reference all previous paragraphs.

9

72. As described above, Defendant Officers conspired among themselves and falsely arrested and detained Plaintiff without legal justification thus violating plaintiffs rights under the Fourth Amendment to the United States Constitution, and 42 U.S.C. Section 1983.

73. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

74. Defendants swore out complaints containing false information. Defendants were aware that these complaints were false.

75. Defendants knew these complaints to be false.

76. By this conduct, Defendants caused the unlawful detention of Plaintiff.

77. As a direct and proximate result of the wrongful actions of Defendants Plaintiff suffered mental, emotional and physical damage and traumas, humiliation, loss of liberty, mental distress and anguish, and actual damages in the form of lost wages and medical expenses.

78. WHEREFORE, Plaintiff respectfully request that judgment be entered in his favor, awarding damages, legal costs, including attorney's fees, and other such relief as the Court deems just and appropriate.

## VII-State Claim Respondent Superior

79. Plaintiffs reallege and incorporate all of the allegations in the preceding paragraphs.

80. In committing the acts alleged, Defendant Officers were members and agents of the Chicago Police Department, acting at all relevant times within the scope of their employment.

81. Defendant City of Chicago is the employer of the Defendant Officers.

82. In Illinois, public entities are directed to pay for any tort judgment for compensatory damages for which employees are liable within the scope of their employment activities. 735 ILCS 10/9-102.

83. As a proximate cause of Defendant Officer's unlawful acts, which occurred within the scope of their employment activities, Plaintiff suffered physical and emotional injuries.

84. WHEREFORE, Plaintiffs demand judgment against Defendants City of Chicago for substantial compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.

### COUNT VI—42 U.S.C. Section 1983 *Monell* Claim

85. Plaintiffs reallege and incorporate all of the allegations in the preceding paragraphs.

86. The actions of the individual Defendant Officers as alleged above were done pursuant to one or more *de facto* policies, practices and/or customs of the City of Chicago, Chicago Police Department, the CPD's Office of Professional Standards, and the CPD's Internal Affairs Division.

87. Among the de facto policies of the municipality and its agents were:

    a. The failure to properly investigation allegations of police misconduct.

    b. The failure to have a system which monitors patterns of alleged police misconduct.

    c. The failure to properly discipline sustained allegations of police misconduct.

11

    **d.** The failure to properly maintain records of police misconduct and allegations of police misconduct, including the use of excessive force and false arrest.

    **e.** The failure to properly hire, train, monitor, and/or supervise officers.

88. A *de facto* policy, practice, and custom of the police code of silence results in police officers refusing to report instances of police misconduct of which they are aware, including the maltreatment of persons, despite their obligation under Department regulations to do so. This conduct included police officers who remain silent or give false or misleading information during official investigations in order to protect themselves or fellow officers from internal discipline or retaliation, civil liability, or criminal prosecution.

89. The aforementioned policies, practices, and customs, individually and collectively have been maintained and/or implemented with deliberate indifference by the Defendant City of Chicago, and have encouraged the individual Defendants to commit the aforesaid wrongful acts against plaintiffs, and therefore acted as a direct and proximate cause of the complained of Constitutional and other legal violations, and Plaintiff's injuries.

90. WHEREFORE, Plaintiff requests that judgment be entered in favor of Plaintiff and against Defendant City of Chicago, and that the Plaintiff be awarded compensatory damages, reasonable attorney's fees, costs, expenses and any other relief that this Honorable Court finds appropriate and just. Plaintiff also seeks injunctive relief in the form of an order to the City of Chicago to commit resources and training on the issue of dealing with gender issues.

## COUNT VII-- Due Process Claim Newsome Claim

91. Plaintiffs realleges and incorporate by reference the foregoing paragraphs as if set forth in full herein.

92. As described above, Defendant Officers' acts and omissions deprived Plaintiff of rights, privileges and immunities secured to her by the Due Process Clause as contained in the Fourth, Fifth and Fourteenth Amendment to the United States Constitution.

93. Defendant Officers caused Plaintiff to be arrested and charged Driving Under the Influence of Alcohol, 625 ILCS 11/5-1(a)(2) under case number TM-292-762, without probable cause.

94. Defendant officers then swore out false complaints and wrote up false police reports intended to mislead prosecutors.  As a result of conduct, Plaintiff was seized, unlawfully searched, incident to his arrest, and subsequently charged with a crime he did not commit, placed in a cell until he was bonded out, had his liberty restricted by being forced to conform to the pre-trial conditions of bond, and was forced to attend court dates..

95. Criminal proceedings were instituted against Plaintiff based upon the conduct of Defendant Officers.

96. Defendant Officers deprived the Plaintiff of her rights by engaging in multiple acts, which include but are not limited to submitting false charges, submitting false police reports, fabricating information on reports and manipulating evidence for the purpose of ensuring that the Plaintiff was charged and with the intention of having Plaintiff wrongfully convicted.

97. The DUI was dismissed on June 16, 2008. Defendant Officer's acts and omissions described in this complaint directed against Plaintiff, were material and intentional, and were in violation of the Plaintiff's due process rights.

98. The aforementioned actions of Defendant Officers caused the Plaintiff to suffer mental and physical anguish, humiliation as a result of the charges brought against her, damage to his reputation, and forced her to incur unnecessary costs associated with defending the false charges brought against him.

99. The individual Defendants' conduct violated plaintiff's right to due process pursuant to the United States Constitution.

100. WHEREFORE, Plaintiff Caroline Smith-Flatow requests that judgment be entered in her favor and against the individual Defendants and that she be awarded compensatory and punitive damages, reasonable attorney's fees, costs, and expenses and such further relief as this Court deems just.

### COUNT VII—Malicious Prosecution Claim

101. Plaintiff incorporates and realleges all previous paragraphs.

102. The Defendant Officers maliciously caused criminal charges to be filed and prosecuted against plaintiff. There was no probable cause for the institution of a criminal charge against plaintiff. The criminal proceedings were commenced and continued maliciously.

103. The individual defendants facilitated this malicious prosecution by falsifying evidence, creating false police reports, falsifying written criminal charges, and giving false and perjured testimony under oath.

104. Plaintiff was wrongfully incarcerated as a direct result of the prosecution of this criminal charge.

105. The dui charge was dismissed by the State on June 16, 2008.

106. Plaintiff was injured, including emotional and physical damage, lost wages, legal fees, traumas, humiliation, loss of liberty, mental distress and anguish.

107. Defendants' conduct was willful and wanton.

WHEREFORE, Plaintiff respectfully request that judgment be entered in her favor, awarding damages, including punitive damages, legal costs, including attorney's fees, and other such relief as the Court deems just and appropriate

**PLAINTIFF DEMANDS TRIAL BY JURY.**

Respectfully Submitted,


_____　　　　　　_____
Jon F. Erickson　　　　　　　　　　　　　　　Michael D. Oppenheimer



Erickson & Oppenheimer, LLC　　　　　　　Erickson & Oppenheimer, LLC
4554 N. Broadway, Suite 325　　　　　　　　4554 N. Broadway, Suite 325
Chicago, IL 60640　　　　　　　　　　　　　Chicago, IL 60640
773-907-0940　　　　　　　　　　　　　　　773-875-4646
ARDC: 6205277　　　　　　　　　　　　　　ARDC: 6292220

**CERTIFICATE OF SERVICE**

    Jon F. Erickson, a licensed attorney, state that on June 2, 2008 a copy of the foregoing 1st AMENDED COMPLAINT was caused to be delivered, electronically, to the following:

Helen Gibbons  
City of Chicago Department of Law  
30 N. La Salle St.  
Suite 1020  
Chicago, IL 60602

Ashley Kosztya  
City of Chicago Department of Law  
30 N. La Salle St.  
Suite 1020  
Chicago, IL 60602

                                                           /s/ Jon F. Erickson  
                                                           Jon F. Erickson